UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| KIMBERLY L. LUDDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 05-196-B-W |
| | ) | |
| SPRAGUE ENERGY CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDED DECISION ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff Kimberly L. Ludden, a driver for a Maine-based transportation company, alleges that Defendant Sprague Energy Corp. should be liable to her in damages for the conduct of its employee, Frank Bartley, who allegedly exposed his genitals to her and urinated in her presence as she waited to pick up a load of oil from Sprague Energy's Searsport terminal and who later told his co-workers and hers that Ludden exposed her breasts to him on the same occasion.  Now pending is Sprague Energy's motion to dismiss Ludden's complaint for failure to state a claim.  I recommend that the Court grant the motion because the allegations are insufficient to support an imposition of vicarious liability against Sprague Energy.

**Facts**

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences in the plaintiff's favor, and determine whether the facts and inferences, when taken in the light most favorable to the non-movant, are sufficient to support the plaintiff's claim or claims for relief.

Clorox Co. v. Proctor & Gamble Commer. Co., 228 F.3d 24, 30 (1st Cir. 2000); LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998).

Ludden alleges that she was required to pick up loads of oil at Sprague Energy's Searsport terminal as one of her duties for her employer. (Compl. ¶ 4.) On August 13, 2005, while waiting for another truck to leave Sprague Energy's warehouse at said terminal, an employee of Sprague Energy named Frank Bartley walked out of Sprague's warehouse, looked directly at Ludden, unzipped his pants, exposed his genitals, and urinated directly in front of her. (Id. ¶ 5.) Ludden alleges that Bartley purposefully engaged in these acts intending to cause her emotional distress and did, in fact, cause her such injury, including sleep loss and other physical manifestations of anxiety. (Id. ¶¶ 6, 10.) The following day, Bartley told others, including some of Ludden's co-workers, that Ludden had lifted her shirt and exposed her breasts on the occasion in question. (Id. ¶ 12.) Ludden complains that this false comment defamed her and also served to exacerbate her emotional distress. (Id. ¶ 13.) Ludden also complains because Sprague Energy has permitted Bartley to continue working in proximity to Ludden, which causes her increased anxiety and distress. (Id. ¶ 11.)

## Discussion

Sprague Energy argues that it cannot be vicariously liable for the acts of Mr. Bartley because the acts he is alleged to have engaged in were not performed within the scope of his employment. (Mot. to Dismiss at 3-6, Docket No. 3.) In addition, Sprague Energy argues that Ludden fails to state a claim for the first of her two claims, intentional infliction of emotional distress, because Bartley's conduct was not so "extreme and outrageous" as to be considered "atrocious" and "utterly intolerable in a civilized community." (Id. at 6-8.)

## A.        Vicarious Liability

"Maine applies the Restatement (Second) of Agency to determine the limits of imposing vicarious liability on an employer."  Mahar v. StoneWood Transp., 823 A.2d 540, 544 (Me. 2003).  Section 228 of the Restatement conditions vicarious liability on whether the employee's conduct was within the scope of his or her employment.  Id.  The test for determining scope is worded as follows:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>     (a) it is of the kind he is employed to perform;
>     (b) it occurs substantially within the authorized time and space limits;
>     (c) it is actuated, at least in part, by a purpose to serve the master, and
>     (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228.  There is no suggestion in the complaint that Bartley is employed by Sprague Energy to perform acts of public indecency or other "indecent conduct." See 17-A M.R.S.A. § 854 (criminalizing "indecent conduct" such as knowingly exposing one's genitals under circumstances likely to cause affront).  Nor is there any allegation that Bartley's acts of public urination in the presence of Ludden or his defamation of Ludden were actuated, even in part, by a desire to serve Sprague Energy.

Ludden's complaint recites only a conclusory allegation that, "[a]t all times pertinent to this complaint, Frank Bartley was acting in the course and scope of his duties as an employee of Defendant."  (Compl. ¶ 9.)  Ludden argues that her scope allegation is sufficient to overcome the pending motion, especially when coupled with Sprague Energy's willingness to permit Bartley to continue working "in close proximity" to Ludden.  (Opp. Mem. at 3, Docket No. 4.)  Conclusory recitation of a legal standard, however, is insufficient to prevent dismissal for failure to state a

claim.  For purposes of the present motion, the question is whether the facts alleged reasonably warrant an inference that Bartley was employed to act in this manner or did so with an intent to serve Sprague Energy.  As for whether Bartley's act of public urination could be proven to have been actuated in part by a purpose to serve Sprague Energy, Ludden merely observes that Bartley was performing job functions immediately prior to and immediately following his act of public urination and that, presumably, Bartley is authorized to urinate while at work (albeit, as Ludden herself adds, in a restroom facility).  (Opp. Mem. at 6.)   Additionally, Ludden asserts that it is Bartley's job function to interact with the truck drivers who visit Sprague Energy's terminal.  (Id.) As to the former point, although it is relevant that Bartley's act of indecency occurred while he was on duty, that solitary fact does little to advance the analysis because there is no allegation, and there is not a reasonable inference available, that Sprague Energy employed Bartley to engage in such acts of indecency.  As for the second point, although it is true that Bartley's conduct was a form of "expression" or "interaction" and that Sprague Energy hired Bartley to speak with and interact with visiting truck drivers, that does not establish that the actual conduct in question, exposing himself and urinating on the ground in Ludden's field of view, was something Bartley was employed to do or was meant to serve Sprague Energy's corporate interest.

Ludden argues that this case falls into a grey area in the law of vicarious liability because the conduct alleged, although "brazen," was not so serious a crime to be "unexpectable" as a matter of law.  (Id. at 5-6.)  In support of this, Ludden cites the dissenting opinion in Mahar.  In Mahar the Law Court affirmed an entry of summary judgment for the defendant trucking company, holding that, as a matter of law, vicarious liability could not be imposed against the company for acts performed by its driver, who menacingly threatened the plaintiffs with a long

pipe while screaming at them while their vehicles were stopped on the road and then "followed them closely for approximately 50 miles." 823 A.2d at 542. The Court stated three reasons for its holding. First, "[a]ssault against and threatening a family is serious criminal conduct that is unanticipated and very different from conduct that [the defendant] would reasonably expect from [the driver]." Id. at 545. Second, the driver "was not authorized to leave his truck to assault the [plaintiffs or] to follow up the assault by harassing them on the highway. Id. Finally, the Court stated it was "clear that [the driver's] motive . . . was unrelated to any interest of [his company]." Id. Together, these factors established that the driver's actions "were well outside the scope of his employment relationship." Id. Ludden's argument concerning the relatively diminished severity of Bartley's conduct concerns only the first of these grounds, whether the conduct in question was so outrageous as to be beyond the bounds of what the company might reasonably expect a driver to do. It does not address the concern that there is no allegation in this case that Sprague Energy actually authorized Bartley to expose himself to Ludden. Nor does it address the fact that there are no allegations regarding how any interest of Sprague Energy could have been served by Bartley's personal motivation to expose himself to Ludden and to urinate in her field of vision. I do not think Ludden's conclusory allegation that Bartley's exposed himself "in the course and scope of his duties" is sufficient to warrant the highly improbable inferences that he did so in order to serve Sprague Energy or pursuant to authorization granted by Sprague Energy. If Ludden has a good faith basis to believe that such *facts* exist or that they are likely to have evidentiary support after a reasonable opportunity for further investigation, she should allege them rather than reciting, in conclusory fashion, that he was acting "within the scope" of his duties.

Ludden argues in the alternative that an imposition of vicarious liability on these facts would be consistent with the verbiage of Section 219(d) of the Restatement (Second) of Agency, which provides:

> (2)  A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
> . . .
> (d)  the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.[1]

According to Ludden, this test is satisfied by the mere fact that Bartley was "on duty" when he urinated in Ludden's presence and his duties called for him to have "contact" with visiting truck drivers.  (Opp. Mem. at 9.)  I have already addressed the fact that Bartley's indecent act was not speech and that there is no reasonable basis to infer that he was hired to perform in this manner.  Nor do the facts alleged offer a reasonable basis to infer that Bartley ever "purported" to expose himself in service to Sprague Energy.  Finally, there is no logical basis to conclude or infer that Bartley was uniquely able to perform this act of indecency merely because it was his job to communicate with visiting truck drivers.  The type of situation in which the agency relationship uniquely aids the employee in causing harm is where the conduct or speech in question demonstrates the agent's "apparent authority" to bind his principal.  Restatement (Second) of Agency § 219 cmt. e; see also Mahar, 823 A.2d at 545-46 ("Comment e to section 219(2)(d) acknowledges that the section is limited in its application to cases within the apparent authority of the employee, or when the employee's conduct involves misrepresentation or deceit.").  Nothing about Bartley's alleged conduct could have reasonably suggested to Ludden the existence of authority, apparent or otherwise.  Finally, Sprague Energy's

---

[1]     It is telling that Ludden does not rely on Section 219(a), which concerns circumstances where the employer or "master" actually intends the conduct to take place.

decision to permit Bartley to continue working at Sprague Energy following this incident is different conduct from the conduct engaged in by Bartley.  Because that conduct was Sprague Energy's own conduct, it does not really inform the vicarious liability analysis in any event.

Because Ludden has not alleged facts supportive of an inference that Sprague Energy employed Bartley to expose himself to female truck drivers, or that Bartley sought with this conduct to serve Sprague Energy in some fashion, or that there was a basis for Ludden to reasonably believe that Bartley had apparent authority to conduct himself in this manner toward her, I conclude that Ludden's allegations pertaining to her intentional infliction of emotional distress (IIED) claim fail to state a claim against Sprague Energy.[2]

As for the defamation claim, Sprague Energy similarly asserts that the "utterance of a false or defamatory statement is not the kind of conduct that Sprague employed Bartley to perform" and was not performed in order to serve Sprague Energy.  (Mot. to Dismiss at 5.)  Ludden responds that "an employer's potential liability for defamatory statements made by an employee is well-established."  (Opp. Mem. at 8.)  In support of her claim, Ludden cites Davric Maine Corp. v. United States Postal Service, 238 F.3d 58 (1st Cir. 2001), and Rippett v. Bemis, 672 A.2d 82 (Me. 1996).  Ludden does not offer much discussion of this claim other than to cite these two cases and note that the defamatory statements were made during business hours to Sprague Energy employees and to individuals employed by Ludden's employer.  In Davric, the First Circuit Court of Appeals affirmed a finding that a postal service employee was acting within the scope of his employment when he defamed the plaintiff and characterized a property the defendant

---

[2]     All Ludden states with respect to discovery is that "discovery has not been undertaken [and] we do not yet have all the details."  (Opp. Mem. at 6.)

owned as being a contaminated site where dead horses and persons were buried, in the course of defending the Postal Service's decision to acquire and develop a different site. It appears that the employee in question had a role in the decision-making process. 238 F.3d at 60-61, 67. The Court concluded that such statements were made in the scope of employment regardless of whether they were authorized because there was no dispute that they were made with an intent to further the Postal Service's site selection process and because the plaintiff, who wanted to avoid a scope certification in order to avoid sovereign immunity, failed to "say what facts, if discovered, would lead to a viable theory that [the federal employee] was acting outside of the scope of employment." Id. at 67-68. Similarly, in Rippett, the defamatory remarks grew out of the defendants' investigation of certain facts asserted by the plaintiff and the defamatory statements were delivered in a written report of the defendants' investigatory findings and in a public statement to the media regarding the same. 672 A.2d at 84-85. In holding that the defendant sheriff's department could be vicariously liable for its detective's statements, the Law Court relied on the fact that the defamation was committed during the course of the detective's work for the department. Id. at 88. No more elaborate discussion was offered. However, it is apparent that the defamation in Rippett, like the defamation in Davric, was the employee's work product, and was, therefore, actuated in a purpose to serve the employer's interest. Unlike both Davric and Rippett, it is not at all apparent from the complaint in this case that Bartley's defamatory statements were actuated by a desire to serve Sprague Energy. Nor has Ludden sketched out any theory as to what facts could potentially be uncovered that would support a finding that Bartley's statements were designed to serve Sprague Energy's interest as opposed to Bartley's private purposes. The

mere assertion that discovery has not yet occurred does not, in my view, resolve the controversy, even for purposes of a motion to dismiss.  As with the IIED claim, Ludden fails to state a claim for which relief may be granted against Sprague Energy because she has not alleged facts affirmatively asserting, or capable of supporting an inference, that Bartley's conduct was actuated, even in part, by a purpose to serve Sprague Energy.

**B.     Atrocious and Utterly Intolerable Conduct**

In order to state a claim for intentional infliction of emotional distress the facts alleged in a complaint must, among other things, present conduct "so extreme and outrageous as to exceed all possible bounds of decency" such that it "must be regarded as atrocious and utterly intolerable in a civilized community."  Curtis v. Porter, 784 A.2d 18, 22 (Me. 2001).  Sprague Energy contends that Bartley's act of exposing himself does not rise to the level of utterly intolerable behavior.  (Mot. to Dismiss at 7.)  As Sprague Energy asserts, Ludden "need only have looked away.  There is no allegation of physical force, touching of any kind, any type of threat, or even an exchange of words."  (Id. at 8.)  Reason might well justify that a line be drawn between a solitary act of  "indecent conduct" of the kind alleged in this case and "atrocious and utterly intolerable" conduct that cannot be tolerated in civilized society.  Ludden herself describes the conduct merely as "brazen" or "not unexpectable" in her effort to advance the case for imposing vicarious liability against Sprague Energy.  In any event, the Law Court's existing precedent reflect that solitary incidents involving intentional torts can support an IIED claim, Curtis, 784 A.2d at 23-24, that dignitary torts such as defamation or even a pattern of harassing conduct might be regarded as atrocious or intolerable under some circumstances, Vogt v. Churchill, 679 A.2d 522, 524 (Me. 1996) (involving a prolonged campaign . . . intended to cause severe emotional distress), and that intentional conduct can support an IIED claim even if it is not

otherwise tortious,  Latremore v. Latremore, 584 A.2d 626, 630 (Me. 1990).  Based on such

precedent, I refrain from making an alternative recommendation that Bartley's conduct cannot

reasonably be regarded as atrocious and utterly intolerable, even if it could be attributed to

Sprague Energy under the doctrine of vicarious liability.  Which is to say that I make *no* legal

finding as to the sufficiency of these allegations.[3]

On the separate question of Sprague Energy's own corporate conduct of permitting

Bartley to continue working, in particular when Ludden is present at the terminal, I am

comfortable concluding that such conduct is neither atrocious nor utterly intolerable in a

civilized society.

## Conclusion

For the reasons stated above, I **RECOMMEND** that the Court **GRANT** the defendant's

Motion to Dismiss (Docket No. 3).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's
report or proposed findings or recommended decisions entered pursuant to 28
U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought,
together with a supporting memorandum, and request for oral argument before the
district judge, if any is sought, within ten (10) days of being served with a copy
thereof.  A responsive memorandum and any request for oral argument before the
district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de
novo* review by the district court and to appeal the district court's order.

---

[3]     It would be easier to conclude that a reasonable person would not likely suffer extreme emotional distress
under the circumstances alleged in Ludden's complaint.  Nevertheless, the Law Court's standard does not include as
an element the question of whether the objectively reasonable person would experience severe emotional distress
upon experiencing the defendant's alleged conduct.  The closest the Law Court comes to authorizing such an
analysis is in its definition of severe emotional distress, which is defined as "emotional distress, created by the
circumstances of the event, that is so severe that no reasonable person could be expected to endure it."  Curtis, 784
A.2d at 23.  This measure, however, appears to turn on the quality of the distress experienced by the plaintiff, not on
the quality of the conduct at issue.  The pending motion is not the proper vehicle for evaluating the quality of
Ludden's distress.  It is enough that she alleges experiencing severe emotional distress giving rise to physical
symptoms.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 23, 2006